STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-54 consolidated with 11-55


STATE OF LOUISIANA IN THE INTEREST OF C.M.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC20080997
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


**MARC T. AMY
JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Oswald A. Decuir and Marc T. Amy, Judges.


**AFFIRMED.**


**Saunders, J., dissents and assigns written reasons.**

**Lloyd Dangerfield
703 E. University Avenue
Lafayette, LA   70503
(337) 232-7041
COUNSEL FOR APPELLANT:**
        **N. M. M.**


**Vivian Neumann
115 West Main Street, Suite 7
Lafayette, LA   70501
(337) 501-6782
COUNSEL FOR APPELLEE:**
        **J. A.**


**Allyson Prejean
Post Office Box 3862
Lafayette, LA   70502
(337) 288-4028
COUNSEL FOR APPELLEE:**
        **C. M.**

**Tamara Rahim**
**State of Louisiana, Department of Social Services**
**825 Kaliste Saloom Road, Room 218**
**Lafayette, LA   70508**
**(337) 262-2250**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana, Department of Social Services**

**Michelle Breaux**
**Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, LA   70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

AMY, Judge.

The State sought termination of parental rights of the appellant's two minor children, alleging that she failed to substantially comply with the assigned case plan in a number of respects. The trial court granted the termination, finding both a failure to substantially comply with the case plan and that the termination was in the best interests of the children. The mother appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

This case involves the termination of parental rights of the two minor children of the appellant, N.M.M.[1] and the children's father, J.A. The record indicates that N.M.M.'s daughter, A.A., died nineteen days after her birth.[2] The State of Louisiana, through the Department of Children and Family Services,[3] took N.M.M.'s older child, C.M. (born in November 2007), into custody the following day. The associated instanter order reported that "the agency was already working with [N.M.M.] due to an earlier report at which time she used cocaine and admitted to having thoughts of wanting to harm [C.M.] because she could not handle his crying." On January 13, 2009, C.M. was adjudicated a child in need of care.

Thereafter, on September 3, 2009, N.M.M. gave birth to a daughter, P.A. The State took P.A. into custody on September 16, 2009. The related instanter order reported that the State received information from personnel at the hospital where P.A. was receiving treatment for a breathing problem that N.M.M. had displayed poor parenting techniques, had not taken an active role in the child's care at the hospital, failed to participate in the child's feeding, and was "very rough with the infant[.]"

---

[1] The initials of the minor children and the parents are used herein pursuant to Uniform Rules—Courts of Appeal, Rule 5-2. *See also* Uniform Rules—Courts of Appeal, Rule 5-1.

[2] The record indicates that the cause of death was not determined.

[3] Formerly the Department of Social Services. *See* La.R.S. 36:471.

The personnel also reported to the State that N.M.M. left the hospital for an extended period. P.A. was adjudicated a child in need of care on December 15, 2009.

In July 2010, the State filed a Petition for Termination of Parental Rights and Certification for Adoption regarding both children. The State alleged that termination of the parents' parental rights to both children was appropriate pursuant to La.Ch.Code art. 1015(4) and La.Ch.Code art. 1015(5) and, further, that termination of those rights was in the best interests of the children. After a September 2010 trial, the trial court determined that the State satisfied its burden and entered judgment terminating the parents' rights and certifying the minor children free and eligible for adoption.

N.M.M. appeals the judgment as to both children[4], although J.A. has not done so. N.M.M. assigns the following as error:

1. The trial court erred in terminating the rights of N.M.M. for substantial non-compliance when she had completed several components of the case plan and OCS failed to prove by clear and convincing evidence there was no reasonable expectation for further improvement in N.M.M.'s condition or conduct.

2. The trial court erred in terminating the rights of N.M.M. regarding P.A., the younger child, when she had not been in OCS's care for more than one year at the time of filing the petition for termination.

3. The trial court erred in finding that termination was in the best interest of the children when considering the relationship with N.M.M.

---

[4] We discuss both matters herein. For the decree regarding this court's ruling as to P.A., see the companion case in *State of Louisiana in the Interest of P.A.*, 11-55 (La.App. 3 Cir. __/__/11), __ So.3d __.

**Discussion**

*Termination of Parental Rights*

In considering a case involving the termination of parental rights, a court considers two elements pertinent to the termination analysis. First, pursuant to La.Ch.Code art. 1015, the State must prove one of the enumerated grounds for termination contained within that provision. The State must do so by clear and convincing evidence. La.Ch.Code art. 1035. Thereafter, the court determines if termination is in the best interests of the child pursuant to La.Ch.Code art. 1037(B).[5] On appeal, we review the trial court's findings as to whether a parent's rights should or should not be terminated pursuant to the manifest error standard. *State in the Interest of K.G. and T.G.*, 02-2886 (La. 3/18/03), 841 So.2d 759.

*Louisiana Children's Code Article 1015(5)*

N.M.M. first contests the trial court's determinations regarding the grounds for termination. Her argument in this regard is comprised of two aspects of Article 1015(5), one of the grounds for termination included in the judgment. First, she argues that the trial court erred in finding substantial noncompliance with the case plan. She asserts that, instead, she completed several requirements of the case plans. Further, she contests the determination that there was no reasonable expectation of significant improvement in her condition or conduct.

---

[5] La.Ch.Code art. 1037(B) provides that:

> When the court finds that the alleged grounds set out in any Paragraph of Article 1015 are proven by the evidentiary standards required by Article 1035 and that it is in the best interests of the child, it shall order the termination of the parental rights of the parents against whom the allegations are proven. The court shall enter written findings on both issues. The consideration of best interests of the child shall include consideration of the child's attachment to his current caretakers.

As it relates to this assignment, La.Ch.Code art. 1015 instructs that:

The grounds for termination of parental rights are:

(5)     Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; *there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child*; *and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future,* considering the child's age and his need for a safe, stable, and permanent home.

(Emphasis added.)

Lack of Substantial Parental Compliance

On the issue of a lack of parental compliance with the case plan, La.Ch.Code art. 1036(C) provides that:

Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:

(1)     The parent's failure to attend court-approved scheduled visitations with the child.

(2)     The parent's failure to communicate with the child.

(3)     The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4)     The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5)     The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6)     The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7)     The persistence of conditions that led to removal or similar potentially harmful conditions.

4

The case plans throughout these proceedings required N.M.M. to: maintain a safe and stable home for herself and her family; demonstrate proof of income; contribute $50 per month to support the children while in foster care; demonstrate self-awareness of her mental health issues[6], including following all recommendations of the doctor and taking medications as appropriate; attend substance abuse support meetings on a regular basis; submit to random drug screens by the State; demonstrate what she learned in her parenting classes; and attend all visits with the children and be on time. By August 2009, N.M.M.'s case plan also required that she attend and complete anger management class through the Family Violence Intervention Program.

In its reasons for ruling, the trial court addressed the parents' compliance with the case plans, stating:

> The parents have both failed to provide adequate housing for the children and have both failed to address their substance abuse issues. The mother continues to abuse prescription medication while pregnant [with] another child. The father has failed to attend an alcohol abuse treatment program. The mother still struggles with mental issues and has failed to attend her appointments regularly. The father has not addressed his anger management problems.

The record supports the trial court's determination that the State presented clear and convincing evidence that she failed to substantially comply with her case plan.

N.M.M. contends that she demonstrated compliance with the case plan in a number of areas, particularly early in these proceedings when C.M. was initially placed in the State's custody. However, the record demonstrates that N.M.M.'s compliance, such as it was, deteriorated thereafter and left only sporadic compliance with elements of the case plan.

---

[6] The record demonstrates that N.M.M. has been diagnosed as having bipolar disorder.

Notably, N.M.M. failed to supply adequate housing for herself and for her family as was required. Instead, she and J.A. lived in her mother's two bedroom apartment. She and J.A. slept in one bedroom, while her mother slept in the remaining bedroom. N.M.M.'s case worker, Christopher Simmons, explained that the home had "some debris around it" and that it is "just not safe for young children." Additionally, there was no room for the children in the event they were returned.

Also, when asked whether N.M.M. demonstrated an ability to provide income as was required by the plan. He stated that, while N.M.M. had indicated that she was employed, she never offered proof or verification of that work. Instead, testimony, including that of N.M.M., indicted that J.A. provided the couple's financial support. The record lacks other proof of N.M.M.'s compliance with this aspect of her plan.

Turning to the requirement that N.M.M. make a monthly $50 contribution to support her children while they were in foster care, the evidence indicates that she consistently failed to do so. Instead, Mr. Simmons reported that N.M.M. had failed to financially contribute to the costs of care.[7] He had, however, observed her present the children with gifts during her visits with them. The nature of these gifts was not explained in the record nor proven to be a meaningful contribution to the children's care.

Further, the State also demonstrated lack of substantial compliance with its requirements that N.M.M. follow physician recommendations regarding her mental health issue and that she take prescribed medications. Instead, the record indicates that, after an initial psychological assessment, N.M.M. began receiving treatment at the Dr. Joseph Henry Tyler, Jr. Mental Health Care Center and did so sporadically.

---

[7] Reports to the trial court contained in the record indicate that she had "not made any parental contributions since June 29, 2009."

At trial, N.M.M. testified that she complied with her recommended mental health treatment. However, she explained that she could not do so while she was pregnant, as she was at trial, because "they don't allow you to be on medication." She further admitted to missing "one or two" appointments at the health center.

However, the Tyler Mental Health records, admitted into evidence under seal, indicated that medications were prescribed to her during her pregnancy and that she had taken them at times. By her appointment in July 2010,[8] N.M.M. reported that she was taking her medications routinely before she ran out of them. At that time, she admitted to taking more than prescribed. During that appointment, she expressed her preference for a particular medication. The clinic's record from that visit indicated that she was advised to continue her medications and that N.M.M. expressed a desire "to continue meds during pregnancy." This evidence, as well as evidence of inconsistent medical health treatment throughout, indicates that N.M.M. failed to demonstrate self awareness of her mental health condition and that she further failed to follow the recommendations of her physician regarding use of medication.

As for those aspects of her case plan regarding substance abuse, N.M.M. admitted that she had not continued to attend substance abuse support meetings. This was confirmed by Mr. Simmons who testified that N.M.M. attended "a couple of NA classes, but there was no verification that was ever produced to the agency that she had attended those classes." N.M.M. explained that she became uncomfortable with the location for her preferred meeting. Yet, it is unquestioned that she did not resume her classes or find an alternative location. Mr. Simmons also confirmed that N.M.M. had two drug tests that were considered positive. The first, in January 2010, was

---

[8] The trial at issue was conducted on September 9, 2010.

considered positive because she "did not go" and that "[s]he had informed the agency that she would test positive for Lortabs." Thereafter, in July 2010, N.M.M. again failed to arrive for the drug screen, resulting in the State's consideration of the screen as a positive. Finally, at trial, N.M.M. admitted taking non-prescribed Xanax and Soma during the two days preceding trial. While N.M.M. points to the instances in which she sporadically attended substance abuse meetings and had negative drug screens, the record clearly supports a determination that she failed to substantially comply with this aspect of the case plan.

As for the components addressing N.M.M.'s development of her parenting skills, it is uncontested that she completed her parenting class. However, Mr. Simmons testified that N.M.M. only complied "somewhat" with her scheduled visitations with the children. He reported that there were "several missed visits in which [N.M.M. and J.A.] did not show at all, and the kids were at the office." He later testified that she only attended about half of the visits. Again, this evidence supports the determination that N.M.M. failed to substantially comply with her case plan insofar as she did not regularly attend her scheduled visitation.

Finally, the case plan required N.M.M. to attend anger management classes. Neither N.M.M. nor J.A. did so. Mr. Simmons testified that this was of particular concern with regard to N.M.M. because of her bipolar diagnosis and due to a medical report indicating that she had thoughts of harming C.M. while he was still in her care. Mr. Simmons confirmed that, despite the State having made between four and six agency referrals for anger management, N.M.M. failed to attend. Thus, the record indicates full noncompliance with this final component of the case plan.

8

In sum, the State presented evidence that N.M.M. failed to fulfill numerous components of the case plan. While La.Ch.Code art. 1036(C) indicates that substantial compliance can be demonstrated through proof of one of its enumerated factors, it is clear that, in this case, the State proved by clear and convincing evidence that N.M.M. failed to substantially comply with the case plan in numerous respects.

Reasonable Expectation of Significant Improvement

N.M.M.'s remaining argument under this assignment is that the trial court erred in finding that the State proved La.Ch.Code art. 1015(5)'s requirement that "there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future[.]"

In this regard, La.Ch.Code art. 1036(D) explains that:

D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

Certainly the record supports a view that N.M.M.'s pattern of behavior evidences a lack of reasonable expectation of improvement pursuant to Article 1036(D)(3). In short, N.M.M.'s pattern of behavior has demonstrated that she has been either unable or unwilling to progress in various components of her case plan

so as to indicate that she will be able to provide an adequate permanent home for the children. Instead, her compliance with the case plan was consistently deficient.

This assignment lacks merit.

*Custody of Less than One Year*

In her second assignment, N.M.M. asserts that termination was inappropriate as to her parental rights of P.A., because the child had not been in custody for more than one year when the petition to terminate parental rights was filed.[9]

This argument focuses on termination under La.Ch.Code art. 1015(5), which requires that, in addition to the other elements, the State prove that: "Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order[.]" However, we note that the judgment terminated parental rights pursuant to La.Ch.Code art. 1015(4) in addition to termination pursuant to La.Ch.Code art. 1015(5). Paragraph (4) does not require that one year has elapsed since a child was removed from the parent's custody. Instead, La.Ch.Code art. 1015(4) provides the following ground for termination:

> Abandonment of the child by placing him in the physical custody of a nonparent, or a department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> . . . .
>
> (b)    As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

It is clear that N.M.M. failed to provide significant contributions to P.A.'s care and support, despite the case plan's requirement that she make $50 contributions while

---

[9] The record indicates that P.A. was taken into custody on September 16, 2009. The petition for termination was filed on July 26, 2010.

the children were in foster care. Instead, the record indicates that N.M.M. made no contributions in this regard.[10] Although Mr. Simmons testified that he had seen N.M.M. provide the children with gifts, there is no indication that these gifts were in the nature of significant contributions to the child's care.

Accordingly, we find no merit in this assignment.

*Best Interest*

As stated, in addition to the State being required to prove at least one ground for termination, it was also required to prove that termination was in the best interest of the children. La.Ch.Code art. 1037(B). N.M.M. challenges the trial court's determination in this regard.

In ruling, the trial court noted that "the children are bonded with their foster parents, and termination of parental rights would be in their best interests." The record supports this finding. In addition to Mr. Simmons' testimony regarding N.M.M.'s failure to substantially comply with the components of the case plan, he further testified that he had observed the children in their foster placement. He explained that: "They are real [sic] bonded to the foster parents. You can tell there's a huge attachment between the kids and the foster parents." He confirmed, too, that C.M. and P.A. were bonded with the foster parents' biological child as well. He explained that the foster parents met all of the children's needs and that, in his opinion, their continued custody in that environment was in their best interest.

Similarly, CASA volunteer Nicole Holmes explained that she had observed the children in their foster home and during their meetings with N.M.M. and J.A. She

_____

[10] Instead, the State's report to the trial court indicated that N.M.M. had made no parental contributions since June 29, 2009. As P.A. was not born until September 2009, it is clear these earlier contributions were not related to P.A., but were related to C.M. instead.

testified that she had witnessed the children become less bonded to their biological parents and that they have become more timid in their interactions with them. She stated that the increase in bonding with the foster parents "has been tremendous." Ms. Holmes stated that the children "feel very securely bonded in that home." Ms. Holmes also expressed concern regarding several aspects of N.M.M.'s conduct, including a recent missed drug screen, a lapse in mental health treatment, a recent domestic dispute between N.M.M. and J.A., and N.M.M.'s failure to attend an anger management program. Like Mr. Simmons, Ms. Holmes opined that termination would be in the children's best interest.

In light of the evidence in the record, we find no manifest error in the trial court's determination that termination was in the best interests of the children. This assignment lacks merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, N.M.M.

**AFFIRMED.**

**COURT OF APPEAL, THIRD CIRCUIT**


**11-54 cw 11-55**


**STATE IN THE INTEREST OF C.M.**
cw
**STATE IN THE INTEREST OF P.A.**


**SAUNDERS, Judge, dissents and assigns written reasons.**

The record, as I read it, does not support the conclusion that there is no reasonable expectation of significant improvement in the mother's condition or conduct. Accordingly, I do not believe that the State has met its burden of proof, and I respectfully dissent.