NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-822

STATE IN THE INTEREST OF

J.S.B AND B.L.B.

************

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. J-65-09
HONORABLE DANIEL E. STRETCHER, DISTRICT JUDGE

************

J. DAVID PAINTER
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and J. David Painter, Judges.

AFFIRMED.

Charles Bull, Jr., Attorney at Law
P. O. Box 400
Welsh, LA 70591
COUNSEL FOR THE MINOR CHILDREN:
    J.S.B. and B.L.B.

Robert S. Lounsberry, Sr., Attorney at Law
P. O. Box 1351
Jennings, LA 70546
COUNSEL FOR APPELLANT:
    C.S.B. (the biological father of the minor children)

**Nick Pizzolatto, Jr., Attorney at Law**
**Louisiana Department of Children & Family Services**
**4250 5th Avenue**
**Lake Charles, LA 70607**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Louisiana Department of Children & Family Services**

**William Riley, III**
**P. O. Box 509**
**Jennings, LA 70546**
**COUNSEL FOR APPELLEE:**
    **R.F.B. (the biological mother of the minor children)**

**PAINTER, Judge**

C.S.B.,[1] the biological father of J.S.B. and B.L.B, appeals the termination of his parental rights. For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL HISTORY

This case involves the termination of parental rights as to two minor children, J.S.B. and B.L.B. R.F.B is the biological mother of the children. R.F.B. and C.S.B. were never married.

J.S.B. was born on December 1, 2008. He tested positive for cocaine at birth, and the Alternative Response Unit of the Jefferson Davis Office of Community Services (now Department of Children and Family Services) became involved. On September 24, 2009, an adjudication petition was filed. Following a hearing on October 15, 2009, custody of J.S.B. was granted to the State; however, the child was not removed from the parents' custody at that time.

B.L.B. was born on December 3, 2009. He tested positive for opiates at birth. B.L.B. was in the intensive care unit for nearly a month after his birth due to problems with his lungs. He has since been hospitalized for pneumonia, RSV, and mucus in his lungs. He required special breathing treatments as well as the care of a cardiologist for heart problems. B.L.B. also has developmental delays requiring physical therapy and occupational therapy. He cannot attend daycare due to the severity of his chronic lung disease (persistent pulmonary hypertension).

Pursuant to an instanter order issued December 7, 2009, both J.S.B. and B.L.B. were taken into State custody. An adjudication hearing was held on January 21, 2010, as to both J.S.B. and B.L.B. R.F.B. and C.S.B. admitted that both children were in need of care.

A petition for termination of parental rights was filed on December 21, 2010, as to both J.S.B. and B.L.B. The matter was heard on April 7, 2011. R.F.B.

---

[1]Pursuant to Rules 5-1 and 5-2 of the Uniform Rules-Courts of Appeal, we use the initials of the parties involved to protect the identities of the minor children.

consented to the termination of her parental rights as to J.S.B. and B.L.B. At the time, R.F.B. was again pregnant, and C.S.B. was alleged to be the father. With respect to C.S.B., the trial court found that there had been no substantial compliance with the case plan for services and that the State had proven by clear and convincing evidence that there were grounds for termination of parental rights under La.Ch.Code art. 1015(5). A judgment of termination of parental rights and certification for adoption of J.S.B. and B.L.B. was signed on April 14, 2011. C.S.B. now appeals, asserting that the trial court erred in finding that he had failed to substantially comply with his case plan.

## DISCUSSION

This court has recently discussed the standard of review applicable to the case at bar as follows:

> In considering a case involving the termination of parental rights, a court considers two elements pertinent to the termination analysis. First, pursuant to La.Ch.Code art. 1015, the State must prove one of the enumerated grounds for termination contained within that provision. The State must do so by clear and convincing evidence. La.Ch.Code art. 1035. Thereafter, the court determines if termination is in the best interests of the child pursuant to La.Ch.Code art. 1037(B). On appeal, we review the trial court's findings as to whether a parent's rights should or should not be terminated pursuant to the manifest error standard. *State in the Interest of K.G. and T.G.*, 02-2886 (La. 3/18/03), 841 So.2d 759.

*State ex rel. C.M.*, 11-54, p. 2 (La.App. 3 Cir. 6/1/11), 68 So.3d 47, 50. (Footnote omitted.)

C.S.B. argues that the trial court erred in finding that he had not substantially complied with his case plan. He asserts that he has complied with the case plan to the best of his ability and that most of the concerns of the court could be taken care of if he had employment. C.S.B. states that to terminate his rights because he cannot find a job is a harsh and unfair remedy.

Louisiana Children's Code Article 1015(5) provides that:

Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

And La.Ch.Code art. 1036(C) provides that:

Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:

(1)    The parent's failure to attend court-approved scheduled visitations with the child.

(2)    The parent's failure to communicate with the child.

(3)    The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4)    The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5)    The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6)    The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7)    The persistence of conditions that led to removal or similar potentially harmful conditions.

The State also alleged that termination was proper under La.Ch.Code art. 1015(4) on the grounds that C.S.B. had failed to provide significant contributions to the children's care and support for six consecutive months. The trial court specifically found that the State had not met its burden under this provision.

The trial court discussed several things that C.S.B. had to accomplish to be reunited with J.S.B. and B.L.B. The first three concerned income, housing, and

3

support of the children. The case plan required C.S.B. to provide proof of income every month. The trial court found that C.S.B. had been somewhat compliant in this aspect. The trial court noted that C.S.B. had been unemployed for several months. The case plan required C.S.B. to provide adequate housing for the children. The trial court found that there was no indication that C.S.B. had available housing. Although C.S.B. owned some property, the residence had no electricity and had not had electricity for several months. The State asserts that other than the five paychecks it introduced into evidence reflecting a withholding for child support, there was no evidence that C.S.B. was contributing to the support of his children. The fourth aspect was that the case plan required that C.S.B. quit smoking because of B.L.B.'s condition. Although C.S.B. indicated that he was able to cut back on his smoking, he had not quit, and the trial court found that there was no significant indication that C.S.B. sought treatment to stop smoking. The fifth aspect was that C.S.B. was required to attend an anger management program. C.S.B. did not do so. The sixth aspect was that C.S.B. was required to attend substance abuse treatment. The trial court found that C.S.B. did complete a program and did produce negative drug screens. The final area required a permanency plan for the children. The trial court found that the testimony and evidence established that C.S.B. had no idea of how he would provide for the children. He had no job, no working vehicle, no place to live with the children, and no real grasp of B.L.B.'s medical needs. Thus, the trial court found that there was not substantial compliance with the case plan and that there was no reasonable expectation of significant improvement.

As we discussed above, the standard of review is manifest error. We find no manifest error in the trial court's judgment terminating C.S.B.'s parental rights.

4

**DECREE**

For all of the foregoing reasons, we affirm the judgment of the trial court which terminated C.S.B.'s parental rights and certified J.S.B. and B.L.B. to be eligible for adoption.

**AFFIRMED.**